IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                          Case No.  24-10015-JWB

DAMIAN F. LOPEZ,

       Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to revoke the magistrate judge's order of detention.  (Docs. 14, 18.)  The court held a hearing on April 25, 2024, and took the matter under advisement.  For the reasons stated herein, Defendant's motion to revoke the detention order (Doc. 18) is DENIED.

### I.  Facts and Procedural History

On February 21, 2024, a grand jury returned an indictment against Defendant that charged him with a single count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (Doc. 1.)  The parties agreed to proceed by proffer at the hearing.  The proffered facts relating to the alleged offense are as follows.

On Sunday, December 10, 2023, the Wichita Police Department received multiple 911 phone calls in the afternoon about a person, whom police subsequently identified as Defendant, engaging in suspicious activity.  The activity ranged from illegally entering into backyards to attempting to break into parked vehicles.  At one point, a homeowner confronted the intruder (while in the homeowner's backyard) about his suspicious behavior.  The homeowner threatened to grab a firearm for defense of his property because the intruder would not leave the backyard.

1

The suspect responded that he also was in possession of a firearm – a clear threat to escalate the situation if the homeowner armed himself.  The intruder eventually left, and the homeowner called the police to report what had occurred.

When a police officer arrived in the neighborhood where these events occurred, he attempted to engage with an individual who fit the general description of the suspect, but individual ignored the officer.  The officer then shouted "Police!" and the suspect started to run.  While running, the suspect maintained an awkward posture with his hand in the pocket of his hoodie, rather than pumping his arms as one would ordinarily do when running.  He eventually removed his hand from his hoodie pocket, and the officer reported that the suspect appeared to be carrying a handgun.  While continuing to run from the police, the suspect entered a different backyard, and the officer radioed for backup because the suspect appeared armed.  Multiple officers entered the backyard and apprehended the suspect, who was thereafter identified as Defendant.

However, when the officers searched Defendant's body at the time of arrest, the handgun was no longer in Defendant's possession.  They then searched for it in the surrounding yards and located it in an adjacent backyard.  The owner of the yard where the gun was found reported that he did not own a handgun, and when the police recovered the gun, it was still warm to the touch (even though it was winter and outside temperatures were relatively cold) and showed no signs of having been left outside for a significant amount of time.

Defendant was arrested on February 22, 2024.  (Doc. 5.)  On February 29, 2024, the magistrate judge ordered Defendant to be detained pending trial because of clear and convincing evidence that there were no conditions or combinations of conditions of release that would reasonably assure the safety of others and the community.  (Doc. 14 at 2.)  Defendant now seeks revocation of the detention order and moves for release pending trial.  (Doc. 18.)

II.     **Standard**

Pursuant to 18 U.S.C. § 3145(b), a defendant may seek review of a magistrate judge's order of detention. The district court's review of a magistrate judge's order of release is de novo. *United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th Cir. 2003). A de novo evidentiary hearing, however, is not required. The district court may either "start from scratch and take relevant evidence or incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted." *United States v. Collier*, No. 12-20021-09, 2012 WL 4463435, at *1 (D. Kan. Sept. 27, 2012) (citing *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991)). The Federal Rules of Evidence do not apply at detention hearings. *See* 18 U.S.C. § 3142(f). The court may allow the parties to present information by proffer or it may insist on direct testimony. *See id*.

Under the Bail Reform Act of 1984, the court must order a defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the court must take into account the available information concerning:

(1) The nature and circumstances of the offense charged, including whether the offense...involves a [] firearm...;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including-

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The burden of proof remains with the government to show that no condition or combination of conditions would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community. *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002) (burden of persuasion regarding risk of flight and danger to community always remains with government). The government must prove dangerousness to any other person or the community by clear and convincing evidence. *Id*. at 1252

## III.    Analysis

The court's analysis is guided by the four factors in § 3142(g). It takes each factor in turn.

### A.    Nature and Circumstances of the Offense

When reviewing the first factor, the court must consider the nature and circumstances of the offense that is charged, including whether it involves a firearm. Here, the offense charged against Defendant involves his unlawful possession of a firearm. Moreover, the evidence indicates that Defendant's possession of the firearm did not occur in a vacuum; instead, he possessed the firearm while he engaged in other property crimes committed during broad daylight under circumstances that suggest a heightened risk of escalating encounters with homeowners, occupants, or other individuals who might lawfully intervene to stop Defendant's apparent attempts to interfere with their property rights. More specifically, the evidence suggests that during one such encounter, Defendant threatened to use his firearm against a law-abiding citizen when the citizen told the Defendant to leave the property he unlawfully entered. The court takes note of this altercation because in Kansas, a person is authorized to use force to defend himself and others; to terminate unlawful entries into his home, workplace, and occupied vehicle; and to

4

terminate interferences with his possession of other property. *See, e.g.,* K.S.A. 21-5221 thru - 5225.   Under certain circumstances, even deadly force is authorized. *See, e.g., id.* Defendant's unlawful possession of a firearm and his threat to use it under the circumstances described above indicates that Defendant is willing to run the risk of escalating already dangerous situations against law-abiding citizens.   Furthermore, while the degree of force authorized under Kansas law may fall short of deadly force when the initial impetus for the encounter is limited to interference with property rights or less severe threats to a person, the risk of escalation may be extraordinary when the perpetrator is armed and displays a willingness to resort to arms if the victim resists.   Under such circumstances, what begins as an interference with property rights may escalate to self-defense or defense of others in the blink of an eye, with attendant risks to all involved as well as innocent bystanders.   Therefore, given the evidence that Defendant possessed a firearm and threatened to use it against a law-abiding citizen who resisted his intrusion onto the latter's property, factor one strongly favors detention.

### B.      Weight of the Evidence

Based on the proffered evidence by the Government, the weight of the evidence against Defendant is strong.   The officer who first arrived at the scene witnessed Defendant running with his hand in the front pocket of his hoodie.   When he witnessed this, he believed Defendant was concealing a gun in his garment.   The officer then witnessed Defendant pull what appeared to be a handgun from his hoodie pocket and run with it in his hand.   When more officers arrived, they entered the backyard where Defendant fled.   They arrested him and discovered a handgun in an adjacent backyard.   The handgun was still warm and showed no signs of having been in the yard for an extended period of time.   Additionally, the owner of the backyard where the gun was found did not own a handgun. Hence, it appears that the Defendant attempted to hide or discard the

handgun he possessed by throwing it into the adjacent backyard.  Thus, the weight of the evidence for the charge against Defendant (i.e., unlawful possession of a firearm by a convicted felon) is strong and favors detention.

### C.    History and Characteristics of Defendant

Defendant is 28 years old and already has a significant criminal record. He has been in and out of prison from the time he was 14 years old.  Some of the charges against him were for petty crimes, but he has also been charged and convicted of multiple felonies—some of which were for violent criminal acts: battery, domestic battery, as well as battery against a police officer. He also received multiple disciplinary violations in prison.  Defendant has also fled and attempted to allude police multiple times and has violated his probation requirements on multiple occasions, resulting in subsequent arrests and imprisonment.

Further, Defendant has no family ties in Wichita, and no family has come forward to house Defendant as he awaits trial for the federal charges against him.  He does not have a permanent address and admits that he has no viable release plan.  He also struggles with substance abuse. Although he wishes to enter inpatient treatment to assist with that, the court notes that even if he were to be successful in getting sober, there is still no viable release plan and his track record of violating probation and alluding police demonstrates Defendant's flight risk.  As such, the court is not convinced that a plan where Defendant first enters a drug rehabilitation program and then a halfway house after completion would ensure that Defendant neither flees nor begins taking drugs again.

Lastly, under § 3142(g)(3)(b), the court is to consider whether the offense occurred when a defendant was on probation for an offense under state, federal, or local law. Defendant was on

probation for a local offense when he committed the crime underlying this case.  Hence, the timing of Defendant's conduct favors pre-trial detention.

After reviewing Defendant's history and characteristics, the court concludes that this factor favors pre-trial detainment.

### D.     Danger to the Community

The court is required to order the pretrial release of a person subject to conditions unless the court determines that such release will endanger the safety of any other person or the community. *See* 18 U.S.C. § 3142(b).  "The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety to the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *4 (10th Cir. July 8, 2022); *see also United States v. Gilliard*, 722 F. App'x 818, 821 (10th Cir. 2018) (citing *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)).

To reiterate, Defendant has been convicted of multiple felonies, which include crimes involving violence, and has received multiple disciplinary violations in prison.  The government has also informed the court that when Defendant was arrested, he was unlawfully entering other people's property (which he has been formally charged with in the past) and even verbally threatened a property owner with a gun.  Defendant has shown he is not afraid to commit crimes or escalate altercations with law-abiding citizens to a point where he and others could be harmed or even killed.

Furthermore, Defendant has been engaged in criminal activity since the age of 14.  From petty criminal activity to criminal trespass and domestic battery, Defendant's criminal record

demonstrates that he has continually violated the law.  His recurrent violations demonstrate his dangerousness to others and the community.

Taken as a whole, the court finds that the available information shows by clear and convincing evidence that Defendant's release would pose a danger to the community which cannot be effectively mitigated with conditions of release.  Therefore, once again, this factor favors pretrial detainment.

## IV.    Conclusion

The government has carried its burden of proving by clear and convincing evidence that there is no combination of conditions that would reasonably assure the safety of others and the community if Defendant were released pending trial.  Accordingly, Defendant's motion for revocation of the magistrate judge's detention order (Doc. 18) is DENIED.

IT IS SO ORDERED.  Dated this 30th day of April, 2024.


s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE